# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

CHRISTOPHER L JONES,   :
           :
   Plaintiff,     :
v.           :   NO. 5:20-cv-00336-TES-MSH
           :
TIMOTHY WARD, *et al.*,   :
           :
   Defendants.    :
_____ :

## ORDER AND RECOMMENDATION

Pending before the Court is Plaintiff's "Motion to Amend/Supplement" his complaint (ECF No. 16).   For the reasons explained below, Plaintiff's motion is granted. Upon preliminary review of the amended complaint, Plaintiff's procedural due process claims against Defendants Ward, Crickmar, and Perry and deliberate indifference to serious medical needs claim against Defendant Perry shall proceed for further factual development. However, it is recommended that Plaintiff's remaining claims be dismissed without prejudice.

## BACKGROUND

The present action is brought under 42 U.S.C. § 1983 and arises out of Plaintiff's placement in long-term solitary confinement in the Tier II program at Macon State Prison ("MSP").   The Court received Plaintiff's original complaint (ECF No. 1) on August 24, 2020.   As Plaintiff's original complaint failed to state a claim for relief, the Court afforded Plaintiff an opportunity to recast his complaint.   Order 2, Dec. 4, 2020, ECF No. 3.   The Court ordered that the recast complaint must not exceed ten pages.   *Id.* at 3.   The Court

received Plaintiff's recast complaint (ECF No. 4) on December 22, 2020. In the recast complaint, Plaintiff identified Timothy Ward, the Commissioner of the Georgia Department of Corrections ("GDOC"), Scott Crickmar, a Regional Director with GDOC, and Clinton Perry, the warden at MSP, as Defendants. Recast Compl. 4, ECF No. 4.

Plaintiff alleged that while he was incarcerated at Autry State Prison ("ASP") in September 2018, Defendants Ward and Crickmar came to inspect the facility. Recast Compl. Attach. 1, at 1, 3, ECF No. 4-1. During the visit, Plaintiff handed Ward a letter complaining about the conditions at ASP. *Id.* at 1. In response, Plaintiff alleged that Ward directed that he be transferred to the Tier II program at MSP and that Crickmar submitted the necessary paperwork—which included false allegations—to effectuate the transfer. *Id.* at 1, 3. Plaintiff contended that his transfer to the Tier II program at MSP was retaliatory and violated his First Amendment rights and right to due process. Recast Compl. 5. Plaintiff also raised a conditions of confinement claim, contending that he was denied meaningful access to medical treatment, legal research material, religious services, rehabilitative programs, and recreation and that he was exposed to "biohazardous conditions as a form of group punishment." Recast Compl. Attach. 1, at 1-2. He states he was in MSP Tier II from September 2018 until July 2019. Recast Compl. 5.

After preliminary screening, Plaintiff's First Amendment retaliation claims were allowed to proceed against Defendants Ward and Crickmar. Order & R. 9, Mar. 11, 2021, ECF No. 7. All other claims were dismissed without prejudice for failure to state a claim. *Id.*; Order 1, Apr. 2, 2021, ECF No. 10 (adopting recommendation). The Court received

Plaintiff's motion to amend/supplement (ECF No. 16) on May 18, 2021.   Plaintiff's

motion is ripe for review.

## DISCUSSION

**I.      Plaintiff's Motion to Amend**

In his motion to amend/supplement, Plaintiff seeks to re-assert his due process and

conditions of confinement claims against Defendants.   He also seeks to add a deliberate

indifference to serious medical needs claim and access to courts claim.   He contends that

he was unable to make the specific factual allegations necessary to support these claims in

his recast complaint due to the ten-page limitation.   Mot. to Amend 1, ECF No. 16.   His

motion to amend/supplement adds factual allegations.

A plaintiff may file an amended complaint once as a matter of course within twenty-

one days of service of the original complaint or within twenty-one days of the defendant's

filing of a responsive pleading or Rule 12 motion to dismiss.   *See* Fed. R. Civ. P. Rule

15(a).   A *pro se* plaintiff does not waive his right to amend as a matter of course by filing

a motion to amend instead of an amended complaint.   *Toenniges v. Ga. Dep't of Corr.*,

502 F. App'x 888, 889 (11th Cir. 2012) (per curiam).   Further, although Plaintiff

previously filed a recast complaint, he did so prior to service and upon direction of the

Court.   Hence, the recast complaint did not count as his one amendment as a matter of

course.   *Maldonado v. Ford*, No. 5:19-cv-421-MTT, 2021 WL 2689837, at *1-2 (M.D.

Ga. June 30, 2021).   Therefore, the Court grants Plaintiff's motion to amend.[1]

## II.   Preliminary Review of Plaintiff's Amended Complaint

Although Plaintiff's motion to amend is granted, his amended complaint remains subject to review and possible dismissal under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.   The Court will now conduct such review.   The Court previously concluded that Plaintiff stated a First Amendment retaliation claim against Ward and Crickmar, so it will only review Plaintiff's added factual allegations to determine if he has stated a due process or conditions of confinement claim.[2]

When conducting preliminary review, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).   *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."   *Boxer X*, 437 F.3d at 1110 (internal quotation marks omitted).

---

[1]   The Court recognizes that an amended complaint generally supersedes the original complaint. *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982).   In this case however, it appears Plaintiff intended for the allegations in his motion to amend to supplement—not supersede—those in his recast complaint.

[2]   The Court previously dismissed Plaintiff's First Amendment retaliation claim against Perry for failure to state a claim.   Order & R. 9, ECF No. 7; Order 1, ECF No. 10 (adopting recommendation).   The Court concluded that Plaintiff's allegations "fail[ed] to show that Defendant Perry was subjectively motivated to discipline [Plaintiff] for exercising his First Amendment rights."   Order & R. 9, ECF No. 7.   Plaintiff has not supplemented his factual allegations pertaining to his First Amendment retaliation claim against Perry, and so, to the extent Plaintiff re-asserts such claim, the Court recommends that it again be dismissed.

Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (per curiam).

A.     Procedural Due Process

Plaintiff re-asserts his procedural due process claim related to his placement in Tier II segregation at MSP.   "To make out a denial-of-procedural-due-process claim under § 1983, a plaintiff must establish three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  *Quintanilla v. Bryson*, 730 F. App'x 738, 743 (11th Cir. 2018) (per curiam) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).   The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally protected interest "'in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir.1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).   Thus, to show deprivation of a constitutionally protected liberty interest, a Plaintiff alleging a due process violation must show that placement in administrative segregation either constitutes a change in conditions so severe that it essentially exceeds the sentence imposed by the court or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995).   Plaintiff has alleged no facts to support the first circumstance, and so, only the second is at issue.

6

The Court dismissed Plaintiff's procedural due process claims on preliminary review because his factual allegations failed to show that his placement in Tier II imposed a hardship atypical of ordinary prison life. Order 6-7, ECF No. 7; Order 1, ECF No. 10 (adopting recommendation). Plaintiff has now supplemented his factual allegations. He alleges that he has a herniated disc and requires a battery-powered transcutaneous electrical nerve stimulation ("TENS") unit to manage the "extreme pain" he suffers. Mot. to Amend 9. He states, however, that Tier II inmates are not allowed to have batteries or a TENS unit even though those in "general population keep and use TENS devices, as needed." *Id.* at 9-10. Plaintiff also alleges that he was prescribed physical therapy and an "eggcrate foam pad" to help with his pain, but that Tier II inmates are denied both. *Id.* at 9-11. Plaintiff cites other conditions of Tier II that he contends are atypical. He alleges "a pattern of misconduct" where other inmates will cause the dorm to flood with feces and staff will allow the sewage to stand for extended periods of time as group punishment. Mot. to Amend 6. He also claims inmates in Tier II are deprived of "out-of-cell exercise recreation," stating "there were many weeks with no out-of-cell time allowed at all." *Id.* at 7. Plaintiff attests that he was subject to these conditions for approximately nine months. Recast Compl. 5. At the pleading stage, these allegations are sufficient to show atypical and significant hardships.[3]

---

[3] Plaintiff also cites certain restrictions on mail and fines imposed by the law library for overdue material. Mot. to Am. 7-8. It is not clear, however, that these conditions differ from those in the general population. *See Gilyard v. McLaughlin*, No. 5:14-cv-185-MTT, 2015 WL 1019910, at *2 (M.D. Ga. Mar. 9, 2015) (concluding plaintiff failed to state a claim where he did not allege how the conditions in Tier II compared with typical prison conditions). Moreover, while Plaintiff's

Plaintiff further alleges he was denied adequate process. A state may "through regulation if not practice," grant inmates "a liberty interest in being free from arbitrary transfers from the general prison population to disciplinary segregation." *Sheley v. Dugger*, 833 F.2d 1420, 1425 (11th Cir. 1987) (per curiam). Moreover, an inmate placed in administrative segregation is entitled to periodic review which "must be meaningful" and not "a sham or a pretext." *Quintanilla*, 730 F. App'x at 744. Plaintiff alleges that Ward told him he was going to "throw [him] in the hole for a year at least" merely for submitting a letter of complaint and that Crickmar fabricated allegations to ensure placement in Tier II segregation was effectuated. Mot. to Amend 2-3. He states he was placed in the program despite never having a disciplinary report or disciplinary hearing. *Id.* at 4. Plaintiff asserts that he appealed his assignment to Tier II, but that the classification committee—despite policies that rendered Crickmar's directives non-binding and despite its members telling Plaintiff they did not believe he should be in Tier II—failed to conduct independent oversight and continued Plaintiff's assignment to Tier II because it had been directed by Crickmar. *Id.* at 4-5. Plaintiff further states that Perry

---

remaining factual allegations may be enough to state a claim, surviving summary judgment may be another matter. *See Nolley v. McLaughlin*, No. 5:15-cv-149-TES-CHW, 2018 WL 9538757, at *6 (M.D. Ga. Aug. 27, 2018) ("Although there are differences between Tier II and general population, this Court and several Courts in this District have repeatedly held that the conditions of the Tier II program do not impose an atypical and significant hardship."). Nevertheless, "the atypical and significant hardship inquiry is fact intensive," and "courts are generally less willing to dismiss claims for failure to allege a state-created liberty interest at the motion to dismiss stage of the proceedings" as opposed to summary judgment. *Conner v. Allen*, No. 6:17-cv-10, 2020 WL 2104943, at *12 (S.D. Ga. May 1, 2020), *recommendation adopted by* 2020 WL 3163292 (S.D. Ga. June 12, 2020).

was "very aware of the fabricated and pretextual retaliatory nature" of his assignment to Tier II based on his presence during a conversation between Plaintiff and Ward. *Id.* at 4. Nevertheless, despite Perry having authority under GDOC policies to reject Plaintiff's assignment, he "rubber-stamped" Plaintiff's continued placement. *Id.* These allegations are sufficient to show that Plaintiff's placement in Tier II was arbitrary and that any process received was pretextual. Therefore, Plaintiff's procedural due process claims against Ward, Crickmar, and Perry will proceed for further factual development.

B.    Conditions of Confinement

Plaintiff also re-asserts a conditions of confinement claim based on unsanitary conditions and lack of recreation while in Tier II. Mot. to Amend 6-7. The Court recommends that these claims be dismissed.

*1.    Conditions of Confinement Standard*

To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must first show that his conditions are objectively "serious," or "extreme." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). This means he must show "a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Id.* (internal quotation marks omitted). "Conditions are objectively serious or extreme if they amount to a deprivation of the minimal civilized measure of life's necessities, or the basic human needs, including reasonably adequate food, clothing, shelter, and sanitation." *Quintanilla*, 730 F. App'x at 746 (internal quotation marks and citation omitted). Whether conditions are cruel and unusual is judged under the

9

"contemporary standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).

A prisoner must also "show that the defendant prison officials subjectively acted with

'deliberate indifference' with regard to the conditions at issue." *Quintanilla*, 730 F. App'x

at 746 (quoting *Chandler*, 379 F.3d at 1289).

### 2.   Unsanitary Conditions

Plaintiff alleges he was subjected to unsanitary conditions while assigned to Tier II.

He contends that inmates would "routinely" and "intentionally" clog their toilets, causing

Plaintiff's cell to flood with raw sewage, and that "[o]ften the staff would leave the dorm

flooded for 24 to 72 hours as a way to punish those responsible (sit in the mess you made

type punishment)." Mot. to Amend 6. He filed a grievance stating that this "happens

weekly and is a pattern of misconduct that regularly forces people to suffer prolonged

biohazardous conditions of confinement." *Id.*  He also alleges that "cleaning supplies

(bleach, disinfectants) were very rarely distributed during the clean ups." *Id.*  Plaintiff

states that the result of this "group punishment," was that he was forced to "eat, sleep and

live in raw sewage for extended periods of time" and could only shower three times a week.

*Id.*  Plaintiff asserts that Perry witnessed the standing water during one inspection on June

17, 2019. *Id.* at 7.

"Exposure to human waste, like few other conditions of confinement, evokes both

the health concerns emphasized in *Farmer* and the more general standards of dignity

embodied in the Eighth Amendment." *Brooks v. Warden*, 800 F.3d 1295, 1304 (11th Cir.

2015) (quoting *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).  Thus, prolonged

exposure to raw sewage can state an Eighth Amendment claim. *See id.* (collecting cases); *see also Taylor v. Riojas*, --U.S.--, 141 S.Ct. 52, 53 (2020) (finding it constitutionally impermissible to leave an inmate housed for four days in a cell "covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet." (internal quotation marks omitted)); *Hines v. Mickins*, No. 5:18-cv-00456-MTT-CHW, 2019 WL 11890605, at *5 (M.D. Ga. Apr. 23, 2019) (finding plaintiff stated a claim where he alleged "purposeful placement . . . in a dirty shower with blood and feces on the walls"), *recommendation adopted by* 2019 WL 11890604 (M.D. Ga. June 13, 2019).

In order to assert a claim, however, a plaintiff must also allege a causal connection between the defendant and the constitutional violation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008). Plaintiff makes no allegations connecting Ward and Crickmar to the unsanitary conditions in Tier II.[4] As for Perry, Plaintiff's only allegation is that he was present on one occasion when there was standing water in the dorm. Mot. to Amend 7. He does not allege that Perry was present when prison staff refused to provide cleaning supplies for the cells or that he was aware that staff let sewage stand as a form of group punishment. Thus, he alleges no personal participation by Perry in the alleged unconstitutional conduct.

---

[4] Plaintiff references various prison officials in his motion to amend. To the extent that a person may be mentioned in the motion to amend in passing but not specifically named as a defendant, the Court finds that those persons are not properly named defendants. While the Court should construe *pro se* pleadings liberally, it is not the Court's duty to determine whom among the numerous mentioned persons are actually supposed to be defendants in Plaintiff's action.

It may be that Plaintiff attempts to hold Perry liable based on his position as warden. Absent personal participation by the supervisor, however, a plaintiff can show a causal connection only if he can establish (1) "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," (2) "a supervisor's custom or policy [that] results in deliberate indifference to constitutional rights"; or (3) that the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). Plaintiff alleges no facts showing that Perry instituted a custom or policy to allow sewage to remain in Tier II cells, that he directed subordinates to do so, or that he was aware they were intentionally doing so. Again, the most he shows is that Perry was present on one occasion where there was standing water.

Plaintiff, therefore, must establish a history of widespread abuse such that Perry would have been put on notice of the need to take corrective action. "The standard for demonstrating 'widespread abuse' is high—the deprivations must be 'obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *Clark v. Sheffield*, 807 F. App'x 910, 918 (11th Cir. 2020) (per curiam) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). Moreover, it is not enough for Plaintiff to show Perry's awareness of cells flooding with feces because by Plaintiff's own admission, the flooding was not due to a defect in MSP plumbing but to other inmates intentionally clogging toilets. Instead, Plaintiff must allege facts showing that Perry would have been placed on notice

12

that his subordinates were intentionally allowing water to sit and not providing cleaning supplies. His reference to a single occasion when Perry was present to witness standing water is insufficient to show widespread abuse. *But see West v. Head*, No. 5:17-CV-89-MTT-CHW, 2017 WL 6568721, at \*4 (M.D. Ga. Nov. 6, 2017) (finding allegations against warden related to "mold, mildew, lack of ventilation, and unsanitary conditions" sufficient to survive frivolity review based on widespread abuse where the conditions had lasted three years and "numerous" inmates had become ill due to the conditions), *recommendation adopted by* 2017 WL 6559910 (M.D. Ga. Dec. 22, 2017).

3.      *Recreation Time*

Plaintiff alleges an "utter lack of out-of-cell exercise/recreation" while assigned to Tier II. Mot. to Amend 7. He contends "[t]here were many weeks with NO out-of-cell time allowed at all." *Id.* He states that he wrote a grievance on November 19, 2018, complaining that while under GDOC policies, he was entitled to five hours a week of exercise outside of his cell, he had been allowed recreation time only twice since his arrival on September 10, 2018. *Id.* "In some cases, allegations of a denial of out-of-cell recreation for an extended period of time will support an Eighth Amendment claim." *Kerch v. Johnson*, No. 5:17-CV-108-MTT-CHW, 2017 WL 8813080, at \*3 (M.D. Ga. July 21, 2017), *recommendation adopted by* 2018 WL 844416 (M.D. Ga. Feb. 13, 2018). Assuming Plaintiff's allegations raise an objectively serious deprivation, however, he again makes no allegations to suggest that that a causal connection exists between the actions of the Defendants and the alleged constitutional deprivation.

C.      Deliberate Indifference to Serious Medical Needs

Plaintiff alleges deliberate indifference to a serious medical need. "Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment." *Brennan v. Headley*, 807 F. App'x 927, 934 (11th Cir. 2020) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts to show that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow*, 320 F.3d at 1243. "Severe pain that is not promptly or adequately treated can [] constitute a serious medical need depending on the circumstances." *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) (per curiam).

An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The disregard of risk must be "by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (per curiam). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that

14

is so cursory as to amount to no treatment at all." *Id.* A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id.* Finally, "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." *Id.*

Plaintiff states that he has a herniated disc and that a neurologist prescribed a battery-powered TENS unit to manage the "extreme pain" he suffers. Mot. to Amend 9. He states, however, that Tier II inmates are not allowed to have batteries or TENS units. Mot. to Amend 9-10. Plaintiff further alleges that he was prescribed physical therapy and an "eggcrate foam pad" to help with his pain, but that Tier II inmates are denied both. *Id.* at 9-11. Finally, he states that he was prescribed an epidural steroid injection on September 21, 2018, but that as of early January 2019, he had not received it. *Id.* at 10. Plaintiff contends he "repeatedly" spoke and wrote to prison officials—including Perry— about the denial of treatment but received no relief. *Id.*

Plaintiff's allegations are sufficient to state a claim of deliberate indifference against Perry. He alleges a serious medical need in the form of severe pain for which he has been prescribed treatment. He further alleges that he directly communicated his need for treatment with Perry and was refused. Therefore, Plaintiff's claim of deliberate indifference for serious medical needs against Perry will proceed for further factual development. *See Estelle*, 429 U.S. at 105-06 (noting that deliberate indifference may be "manifested . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). Plaintiff alleges no

15

causal connection with Ward and Crickmar, however, and so, the Court recommends that the deliberate indifference to serious medical needs claims against them be dismissed.

D.     Access to Courts

Plaintiff also alleges an access to courts claim. "[P]risoners have a constitutional right of access to the courts. To have standing to seek relief under this right, however, a plaintiff must show actual injury by demonstrating that a nonfrivolous legal claim has been frustrated or impeded." *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (internal citations and quotation marks omitted). Plaintiff contends that he had "difficulty accessing the law library and getting research materials" because he was only allowed to request "two cases per week," and received a fine if they were not timely returned. Mot. to Amend 8. He alleges fines were imposed without due process. *Id.* Finally, he contends prison officials confiscated copies of GDOC policies received in the mail "from home" because they did not come from prison staff. *Id.* at 7.

Plaintiff fails to state a claim for at least two reasons. First, Plaintiff again fails to show a causal connection between the alleged violations and any of the Defendants. Second, Plaintiff alleges no injury. He has not identified any legal claim that has been frustrated or impeded by the prison restrictions. Moreover, his motion to amend is replete with citations to the GDOC policies, so he clearly has had no difficulty obtaining the copies he needed. Therefore, the Court recommends that Plaintiff's access to courts claim be dismissed.

### III.   Conclusion

For the foregoing reasons, Plaintiff's motion to amend (ECF No. 16) is **GRANTED**. His procedural due process claims against Defendants Ward, Crickmar, and Perry and deliberate indifference to serious medical needs claim against Defendant Perry shall proceed for further factual development.   It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Perry, it is accordingly **ORDERED** that service be made on Defendant Perry and that he file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendant Perry is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of

expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the

unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be

19

advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

SO ORDERED AND RECOMMENDED, this 13th day of July, 2021.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE